IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Case No. AW-09-00825 |
| WASHINGTON SUBURBAN SANITARY COMMISSION | ) ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Pending before this Court is the United States Equal Employment Opportunity Commission's ("EEOC" or Petitioner) Application to Show Cause Why an Administrative Subpoena Should Not be Enforced against the Respondent, Washington Suburban Sanitary Commission ("WSSC"). (Doc. No. 1.) The purpose of the administrative subpoena is to investigate the age discrimination claims of former employees of the WSSC whose positions were terminated after WSSC reorganized its Information Technology ("IT") department. The Court heard oral arguments on October 9, 2009. The central issue for this Court to resolve is whether, and to what extent, WSSC's legislative immunity argument prohibits or limits the EEOC's investigatory power.

## FACTUAL BACKGROUND

The EEOC is attempting to investigate the age discrimination claims of 15 former employees ("Charging Parties"), of the WSSC. The Charging Parties allege that the WSSC denied older employees training opportunities, terminated all of the current employees in a 2006 reorganization of the WSSC's IT department, and replaced them with younger employees hired after the reorganization. In response to the EEOC's notice of the charge, WSSC asserted that the

reorganization was the result of a legitimate business purpose and that the Charging Parties' claims were barred by legislative immunity. The WSSC contends that it included the reorganization of the entire IT department in a budget that it proposed to the Prince George's County and Montgomery County Councils in 2006. As required by Maryland statute the WSSC submitted its budget to the County Councils for Prince George's County and Montgomery County. After reviewing the budget, the County Councils provided the funding necessary to meet WSSC's request for a redeveloped IT department, which eliminated all 81 merit system positions within that department.

The EEOC has requested several classes of documents from the WSSC to conduct its investigation of the Charging Parties' claims, which were submitted on March 7, 2008. These documents include:

   A. The employee file for all charging parties, for the Chief Information Officer Goutam Kandu, for all of Respondent's former ["IT"] employees and consultants who applied for any job with Respondent following the abolition of the IT department, and for all persons responsible for hiring, firing, and discipline[ing] during and after Respondent's restructuring of the IT department in 2006;

   B. All documents related to all analyses, reviews, and standards Respondent relied upon in its decision to abolish the IT department;

   C. All records of all internal deliberations surrounding Respondent's decision to reorganize the IT department;

   D. All tests Respondent used for hiring, retention, or promotion of employees, consultants, or candidates, in Respondent's IT department from January 1, 2005 to present;

   E. All documents related to any criteria Respondent relied upon in hiring new employees and consultants in the IT department during and after Respondent's reorganization of that department in 2006;

   F. The identity of all employees and consultants employed with Respondent at any time from January 1, 2005 to present;

G. The identity of all persons who applied for jobs in Respondent's IT department following Respondent's abolition of that department;

H. The identity of all persons hired for positions in Respondent's IT department following Respondent's abolition of that department;

I. The identity of all employees and consultants who were terminated as part of the abolition of the IT department and subsequently rehired in that department;

J. All documents to all advertisements Respondent used to advertise for jobs in Respondent's IT department during and after the IT department reorganization of 2006, including internal advertisements, specifying where the advertisements appeared, the form of the advertisement (print/radio/electronic/etc.), and its duration;

K. Documents related to all training opportunities that Respondent made available to employees in Respondent's IT department from January 1, 2005 to present, identifying the dates when these trainings were made available, and the methods of advertisement;

L. Job descriptions for all job functions at Respondent's IT department from January 1, 2005 to present, identifying any special skills or abilities necessary for the jobs, the rate of pay for each job, and job benefits (if any);

M. Records of all hires, promotions, employee discipline for any reason (formal or informal), terminations, and voluntary separations at Respondent's IT department from January 1, 2005 to present;

N. All documents which relate to any judicial, administrative, internal, or other complaint or allegation (formal or informal) of age-based discrimination, or retaliation for any reason against Respondent, any of its officers, managers, or agents made at any time from January 1, 2005 to present;  and

O. All personnel manuals, employment handbooks, rules, regulations, posters, or other documents referring to formal or informal policies or criteria which have been applied to employees at any time from January 1, 2005 to present.

(Decl. of Baltimore Field Office Director Gerald Kiel.)

During oral arguments, the EEOC informed the Court that it was no longer pursuing requests B and C.[1] Nevertheless the WSSC appears to argue that the remaining requests in the EEOC's subpoena should also be denied because the WSSC's claim of legislative immunity prohibits any investigation into its actions despite the fact that the EEOC has not yet brought suit against it.

## STANDARD OF REVIEW

The EEOC's subpoena enforcement proceedings involve limited judicial review. *Equal Employment Opportunity Comm'n v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 113 (4th Cir. 1997). To enforce an administrative subpoena, the agency need only demonstrate that: "(1) the investigation is within the agency's authority; (2) the procedural requirements have been followed; and (3) the information sought is relevant to the investigation." *Id.*; *Equal Employment Opportunity Comm'n v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001).[2] In fact, "courts must enforce administrative subpoenas unless the 'evidence sought by the subpoena [is] plainly incompetent or irrelevant' to 'any lawful purpose' of the agency." *Karuk Tribe Housing Auth.*, 260 F.3d at 1076 (citing *Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975)). "A party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it." *Id.* (quoting *Equal Employment Opportunity Comm'n v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1429 (9th Cir. 1983)). Enforcement of administrative subpoenas is "not absolute," and a court should not enforce a subpoena where the "defense raised is 'jurisdictional' in nature-i.e., when the agency lacks jurisdiction over the subject of the investigation." *Id.* However, the court should enforce an administrative subpoena, unless "jurisdiction is 'plainly lacking.'" *Id.*

---

[1] The EEOC also acknowledged that it would work with the WSSC to ensure that the remaining requests do not impose an undue burden on the WSSC.
[2] Respondent did not question the last two prongs of this standard in its briefings.

4

## ANALYSIS

The question before the Court is whether the EEOC's administrative subpoena to investigate the claims of discrimination should be enforced. In addressing this question, the pivotal issue argued by the parties is whether the EEOC has authority to investigate a claim of age discrimination against a party that asserts legislative immunity. Before discussing the details of legislative immunity, and its evidentiary privilege, the Court first addresses whether such a privilege would be sufficient to override the EEOC's administrative authority.

**I.   The Effect of Legislative Immunity on Enforcement of the EEOC's Administrative Subpoena.**

The EEOC asserts that it has authority to conduct investigations of age discrimination under 29 U.S.C. § 626(a), which provides  that "the Equal Employment Opportunity Commission shall have the power to make investigations and require the keeping of records necessary or appropriate for the administration of this chapter . . . ." The Petitioner claims that its subpoena power is summary in nature and cites *EEOC v. Lockheed-Martin Corp.*, which emphasizes limited judicial review of EEOC subpoenas.  116 F.3d at 113.  Moreover, the Petitioner asserts that "legislative immunity is a defense which speaks to the merits of the case," and thus as articulated in *Karuk Tribe*, has no effect on its authority to investigate the Charging Parties' claims.  (Doc. No. 1 at 12.)   As further support for this proposition, the EEOC cites *Carver v. Forester*; however, the Third Circuit in *Carver* specifically stated that "absolute immunity is an issue of law, separable from the merits of the case" and concluded that the Court of Appeals could immediately review a district court's denial of a summary judgment motion based on a party's absolute legislative immunity. 102 F.3d 96, 99 (3rd Cir. 1996).  Therefore, courts treat legislative immunity as a defense separate from the merits of the case.

As noted in both *Lockheed-Martin* and *Karuk Tribe Housing Authority*, the subpoena power of administrative agencies is not absolute.  In fact, as the Respondent points out, courts

have specifically refused to enforce EEOC subpoenas where the request involved a document protected under the attorney-work product privilege and where the Age Discrimination in Employment Act ("ADEA") did not apply to employment decisions of Indian Tribes. *Equal Employment Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959 (D.C. Cir. 1999); *Karuk Tribe Hous. Auth.*, 260 F. Supp. at 1071.  The Respondent also argues that although the Supreme Court in *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182 (1990), declined to recognize a peer review privilege to prevent the enforcement of an EEOC subpoena against a state university, the Court suggested that privileges with a Constitutional foundation or historical or statutory basis may provide a sufficient bar to enforcement of administrative subpoenas.  (Doc. No. 4 at 15-16.)  As explained in *Bogan*, legislative immunity is embedded in the "Federal Constitution, the Constitutions of many of the newly independent States, and the common law" dating as far back to at least the "Sixteenth and Seventeenth Centuries."  *Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1998).  Therefore, it is likely that an assertion of legislative immunity, and the evidentiary privilege derived from it, would be a sufficient objection to an administrative subpoena if the party asserting the privilege qualifies for legislative immunity.

**II.    The Distinction Between Legislative Immunity and Legislative Privilege.**

A review of the briefs reflects an interchangeable use of the term legislative immunity with legislative privilege, but neither party focused on the distinction.  In fact, legislative privilege is a derivative of legislative immunity.  Legislative immunity, applicable to Congress by the Speech or Debate Clause of the Constitution and extended to state and local legislators through the federal common law, protects legislators from suit arising from their legitimate legislative actions.  U.S. Const. art. I, § 6, cl. 1; *2BD Assocs. Ltd. P'ship v. County Comm'rs*, 896 F. Supp. 528, 531 (D. Md. 1995).  The purpose of legislative immunity is "to insure that the

legislative function may be performed independently without fear of outside interference." *Supreme Court of Va. v. Consumers Union of the U.S.*, 446 U.S. 719, 731-32 (1980). Legislative immunity protects those "engaged in legitimate legislative activity . . . not only from the consequences of litigation's result but also from the burden of defending themselves." *Id.*

Legislative privilege, on the other hand, is an evidentiary and testimonial privilege that prohibits evidence of legislative acts from being used against legislators in proceedings. *In re Grand Jury*, 821 F.2d 946, 953 (3rd Cir. 1987); *Kay v. City of Rancho Palos Verdes*, 2003 U.S. Dist. LEXIS 27311, at *26-27 (C.D. Cali. Oct. 10, 2003) (stating that "a limited legislative privilege [exists] against supplying evidence, . . . , lest lawmakers similarly fear that they [will] be subjected to the burdens of answering subpoenas and testifying about their legislative work"); *2BD Assocs. Ltd. P'ship*, 896 F. Supp. at 531(explaining that legislative immunity has a two-fold effect of "protecting legislators from civil suit and [functioning] as an evidentiary and testimonial privilege"). In any event, the privilege is only permitted to protect actions that are considered legislative.

The Respondent appears to argue that legislative immunity, and its derivative evidentiary privilege, is an impenetrable shield that completely insulates any disclosure of its documents from the EEOC's investigatory authority. However, legislative privilege is "one of non-evidentiary use [of legislative acts against a legislator], not one of non-disclosure." *Grand Jury*, 821 F.2d at 958. This District, in *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 302 n.20 (D. Md. 1992), used this understanding of the role of legislative privilege to explain that the defendants, as members of the Governor's Committee convened to develop a redistricting plan submitted to the Maryland General Assembly, would have to produce documents concerning the Committee's deliberations. Moreover, the court in *Rodriguez v.*

*Pataki*, stated that "notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions." 280 F. Supp. 2d 89, 95-96 (S.D.N.Y. 2003) ("In some extraordinary instances [legislators] might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by the privilege." (quoting *Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977))).  Nevertheless, many courts have used the reasoning behind the analogous concept of the deliberative process privilege,[3] to prevent disclosure of "communications involving opinions, recommendations, or advice about legislative decisions." *See Grand Jury*, 821 F.2d at 959; *Rodriquez*, 280 F. Supp. 2d at 100 (explaining that regardless of the characterization of the privilege as legislative or deliberative, the "Court must balance the extent to which production of the information sought would chill the legislator's deliberations"). Therefore, this Court finds that the Respondent's legislative immunity argument will prevent enforcement of the EEOC's subpoena only to the extent that the WSSC actually engaged in legislative actions and that the subpoena seeks documents relating to any such legislative decision.

### III. Legislative Immunity, and its Evidentiary Privilege, Can Only be Invoked for Actions that are Legislative.

Actions that are administrative or executive in nature are not afforded the protections of legislative immunity. *Supreme Court of Va.*, 446 U.S. at 731-32 (stating that the members of the Virginia Supreme Court acted as "the State's legislators for the purpose of issuing the Bar Code"

---

[3] The deliberative process privilege appears to provide protection for evidence relating to administrative acts, while the legislative privilege provides a similar protection for legislative actions. In order for a document to qualify for the deliberative process privilege it must be "pre-decisional," meaning that 'it was prepared in order to assist an agency decision-maker in arriving at his decision," and "deliberative that is, 'actually . . . related to the process by which policies are formulated.'" *Rodriquez*, 280 F. Supp. 2d at 98.  Moreover, the deliberative process privilege "only protects expressions of opinions or recommendations . . .; it does not protect purely factual material." *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 581 (E.D.N.Y. 1979).  Therefore, similar to the legislative privilege, the deliberative process privilege, would only bar disclosure of documents relating to why WSSC decided to reorganize the IT department. As explained below, the Court does not need to fully analyze this privilege because the EEOC has agreed to abandon its requests for documents relating to that decision.

which invoked legislative immunity for those actions, but holding that legislative immunity did not protect the Virginia Supreme Court when it enforced those rules); *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995). Legislative immunity is not limited to individuals holding a legislative title. Instead, "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions . . . [which involve] integral steps in the legislative process." *Bogan*, 523 U.S. at 55 (holding that the petitioner's introduction of a budget was a legislative act even though he was an executive official). Whether "an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. The essential factor leading to an application of legislative immunity is whether the action has broad, more general, policy implications or merely "singles out specifiable individuals." *Alexander*, 66 F.3d at 66.

The Fourth Circuit, in *Alexander v. Holden*, indicated that "most budget decisions, by virtue of their impact on employment – by either creating or eliminating positions or by raising or lowering salaries . . . – are generally decided by commissioners acting in a legislative capacity." 66 F.3d at 65 (citations omitted). Moreover, as articulated in *Abbey v. Rowland*, "any participant in [the budgetary] process must have the freedom to make decisions and recommendations in accord with their legal obligations without fear of suit." 359 F. Supp. 2d 94, 100 (D. Conn. 2005) (holding that the Commissioner of the Mental Health and Addiction Services for the State of Connecticut was able to invoke legislative immunity for requesting a budget allocation that led to the elimination of all Psychiatric Social Workers). However, the Fourth Circuit explained that employment and personnel decisions generally involve administrative acts which would not invoke the protection of legislative immunity. *Alexander*, 66 F.3d at 66; *see also Bogan*, 523 U.S. at 56 (stating that "termination of a position, unlike

hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office").

In this case, the Court concludes that only a few of the items in the EEOC's subpoena contain the possibility of being classified as legislative actions. At best, the WSSC's creation of a budget that included a reorganization of the IT department, which eliminated all the merit-based positions in that department, could constitute a legislative act because it was reviewed as part of the budgetary process of local legislators. By state statute, the WSSC is required to submit its proposed budgets to the County Councils for Prince George's County and Montgomery County. Md. Ann. Code art. 29, § 1-204 (2009). The County Councils have authority to "add to, [or] delete from . . . an item of" the budget before granting approval for the funding necessary to implement the WSSC's budget. *Id.* The WSSC contends that the County Councils reviewed its budget, which included a reorganization of its IT department that eliminated all merit system positions and replaced them with higher salaried positions, and neither Council rejected the $550,000 funding necessary to implement this plan. In light of the decisions in *Bogan*, *Alexander*, and *Abbey*, the WSSC's participation in this budgetary process arguably qualifies for legislative immunity.

However, the EEOC is seeking to investigate claims that the WSSC discriminated against its older employees before this budgetary process occurred by failing to provide older employees with adequate training and hiring younger employees after the reorganization occurred. Accordingly, the vast majority of the EEOC's subpoena request documents related to administrative actions such as the hiring of new employees, training of employees, and disciplining of employees. Thus, only items B and C of the EEOC's subpoena, which seek "all documents . . . relied upon in [Respondent's] decision to abolish the IT department" and "all

10

documents of all internal deliberations surrounding Respondent's decision to reorganize the IT department," could possibly be protected by legislative immunity and its evidentiary privilege. (Decl. of Baltimore Field Office Director Gerald Kiel.)  However, the EEOC is no longer seeking documents requested in items B and C.   Therefore, this Court finds that to the extent that the WSSC is entitled to legislative immunity, which this Court need not address because the pending matter before this Court is not a suit against the WSSC, that immunity and its evidentiary privilege does not prevent disclosure of the remaining items of the EEOC's subpoena.

## **CONCLUSION**

For the reasons articulated above, the Court finds that any legislative privilege afforded to the WSSC is limited to the decision to restructure the IT department.  The EEOC has agreed not to pursue its request for documents relating to how or why the WSSC decided to reorganize its IT department.  The remaining requests in the EEOC's subpoena only seek information related to the WSSC's training of employees, hiring of new employees after the reorganization, and disciplining of employees.  Therefore, the Court **GRANTS** the EEOC's Application to Show Cause Why an Administrative Subpoena Should Not be Enforced (Doc. No. 1) for all items except B and C, which the EEOC has agreed to forgo.  A separate Order shall follow this Memorandum Opinion.

October 26, 2009                                                               /s/
    Date                                                              Alexander Williams, Jr.
                                                                 United States District Court Judge